UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLARD SMITH, | ) | CASE NO. 4:15cv668 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| J.C. HAYES, et al, | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

*Pro se* plaintiff Willard Smith filed this *Bivens*[1] action against Elkton Federal Correctional Institution ("FCI Elkton") Unit Manager J.C. Hayes and FCI Elkton Unit E Case Manager D. Lewis. In the complaint, plaintiff alleges he was given a "low" security classification when he arrived at FCI Elkton when he should have been classified as "minimum" or "camp." He asserts he was denied due process in the disciplinary proceedings, he was denied equal protection, and he was denied due process when he exercised his right to administrative redress. He seeks monetary damages.

## I. BACKGROUND

Plaintiff had a low security classification when he was incarcerated at FCI Morgantown in West Virginia in June 2012. He received an incident report for fighting on June 20, 2012, and was found guilty of the infraction by the disciplinary hearing officer. Nevertheless, the Warden approved a near-release transfer to any other low custody facility

---

[1] *Bivens v. Six Unknown Agents*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971).

near plaintiff's home state of Ohio. He submitted an administrative appeal of his incident report to the Regional Office of the Bureau of Prisons ("BOP") in September 2012. That same month, he was transferred to FCI La Luna in Texas.

In March 2013, the Regional Director remanded his conduct decision for further investigation. The incident report was rewritten two more times, and was reconsidered by the disciplinary hearing officer at FCI La Luna in June 2013. The officer found him guilty of the infraction and plaintiff appealed the decision. This time, the Regional Director upheld the guilty finding. Plaintiff appealed the decision to the national office but did not receive a response.

In April 2014, the FCI La Luna Warden recommended plaintiff's transfer to a near-release facility. He completed a custody and classification form which established an overall score of "12" points, which classified him as "low" security. The Warden modified that classification several days later to a score of "11" points, which classified him as "minimum" or "camp" security. Plaintiff expressed concern to the Warden that there was confusion about his classification, but he claims the Warden assured him that he would make a request for "camp" placement. Because the lateral transfer to "low" security had already been approved, however, the Unit Staff requested a management variable be applied to Plaintiff's classification calculation.

Plaintiff was transferred to the FCI Elkton's low security facility in July or August 2014. He claims he told Hayes and Lewis he was "camp" eligible. He claims they told him he would be placed in the satellite low facility at FCI Elkton to satisfy the "camp" custody classification. That transfer did not take place. In February 2015, Lewis informed

him that his custody level score was raised to "low" because they calculated his "disciplinary-free" time from the date of the second disciplinary hearing, not the date of the original hearing. Hayes upheld that decision.

Plaintiff asserts three claims. First, he claims he was denied due process in the disciplinary hearing process. He disputes the accuracy of the guilty finding, which he claims was based on another prisoner's version of events. He states that as a result of the disciplinary conviction, he was sanctioned with loss of good time, loss of the opportunity for a lower security classification, and loss of programing available to inmates with the camp security designation. Second, plaintiff claims he was denied equal protection. He alleges Lewis and Hayes have complied with the classification statutes and BOP programming statements encouraging individual placement decisions for other inmates, but treated him differently with no rational basis. Finally, he claims he was denied due process in the administrative appeals process because the denial of transfer to a lower security classification would influence an ordinary person to consider not pursuing his First Amendment right to file grievances and appeals.

## II. DISCUSSION

**A. Standard of Review**

Although pro se pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365, 102 S. Ct. 700, 70 L. Ed. 2d 551 (1982) (per curiam) (citing *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*,

490 U.S. 319, 328, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. A cause of action fails to state a claim upon which relief may be granted when it lacks plausibility in the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564, 127 S .Ct. 1955, 167 L. Ed. 2d 929 (2007).

A pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78, 129 S. Ct. 1937173 L. Ed. 2d 868 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Bell Atl. Corp*., 550 U.S. at 555. The plaintiff is not required to include detailed factual allegations, but must provide more than an unadorned, the defendant unlawfully harmed me accusation. *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id*. In reviewing a complaint, the Court must construe the pleading in the light most favorable to the plaintiff. *Bibbo v. Dean Witter Reynolds, Inc*., 151 F.3d 559, 561 (6th Cir. 1998).

## B. Analysis

Plaintiff first claims he was denied due process in his disciplinary hearing because the hearing officers wrongfully convicted him. The Fifth Amendment provides that "no person shall be deprived of life, liberty, or property, without due process of law." U.S.

Const. amend. V. In addition to setting the procedural minimum for deprivations of life, liberty, or property, the Due Process Clause bars "certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986). It does not prohibit every deprivation by the government of a person's life, liberty or property. *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994). Only those deprivations which are conducted without due process are subject to suit under 42 U.S.C. § 1983. *Id*.

The goal of due process is to minimize the risk of erroneous deprivation, to assure fairness in the decision-making process, and to assure that the individual affected has a participatory role in the process. *Id*. Procedural due process requires that an individual be given the opportunity to be heard "in a meaningful manner." *See Loudermill v. Cleveland Bd. of Educ.*, 721 F.2d 550, 563 (6th Cir. 1983). Procedural due process claims do not consider the egregiousness of the deprivation itself, but only question whether the process accorded prior to the deprivation was constitutionally sufficient. *Howard v. Grinage*, 82 F.3d 1343, 1349-50 (6th Cir. 1996). When analyzing a procedural due process claim, the Court must first determine whether there is a protected liberty or property interest at stake. *Id*. If a protected liberty or property interest is at stake, the focus of this inquiry moves to the process provided, rather than on the nature of the right. *Id.*

First, it is not clear that plaintiff's claim centers on the deprivation of a protected liberty interest. Although plaintiff mentions he lost good time credits, his main objection to the guilty finding is that his security classification was not lowered. It was not raised as a result of the conduct violation, but it was not lowered to "camp" because he was

5

no longer "discipline free" for the requisite period of time. Prisoners do not have a constitutional right to be held under a specific security classification, or to be incarcerated in a particular prison. *Olim v. Wakinekona*, 461 U.S. 238, 245, 103 S. Ct. 1741, 75 L. Ed. 2d 813 (1983); *Cash v. Reno*, No. 97-5220, 1997 WL 809982, at *2 (6th Cir. Dec. 23, 1997) (citation omitted). Plaintiff has no protected liberty interest in receiving a "camp" security classification or in being transferred to the camp facility.

Furthermore, to the extent the loss of good time credits would qualify as a protected liberty interest to require due process protection, plaintiff received a constitutionally adequate procedure prior the deprivation of that protected interest. The Due Process Clause, standing alone, confers no liberty or property interest in freedom from government action taken within the sentence imposed. *Sandin v. Conner*, 515 U.S. 472, 480, 115 S. Ct. 2293, 132 L. Ed. 2d 41863 (1995). "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id*. at 485. Where good time credits are at stake, due process requires only that a prisoner receive: (1) written notice of the hearing at least twenty-four hours in advance; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reason for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 563-67, 94 S. Ct. 2963 41 L. Ed. 2d 935 (1974). Further, some evidence must exist to support the disciplinary conviction. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455-56, 105 S. Ct. 2768 86 L. Ed. 2d 356 (1985).

Plaintiff does not dispute the adequacy of the process he received. Instead, he disputes the veracity and accuracy of one piece of evidence used to support the finding of guilt. He believes his testimony should have been believed over that of another inmate. This Court cannot review the evidence and weigh the credibility of the witnesses. A district court has no authority under the guise of due process to review a disciplinary committee's resolution of factual disputes. *Superintendent, Mass. Corr. Inst.,* 472 U.S. at 454–56. The Court's role is to ensure that the process was fair and not arbitrary. *Id.* Plaintiff was provided with a hearing before the Disciplinary Hearing Officer. He appealed the decision of that Hearing Officer. The BOP Regional Hearing Officer reversed the finding of guilt and remanded the case to the Hearing Officer for further investigation. The conduct report was rewritten two more times. Plaintiff received a second hearing and another appeal. While he disagrees with the ultimate decision, it was supported by some evidence. Plaintiff's procedural due process rights were not violated.

Plaintiff's second claim is one of denial of equal protection. The Equal Protection Clause prohibits discrimination by government actors that either burden a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681-682 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). When disparate treatment is shown, the equal protection analysis is determined by the

7

classification used by government decision-makers.

Here, plaintiff claims he was treated differently than others without a rational basis. He, however, does not allege facts to suggest he was treated differently than other prisoners who were similarly situated, and he does not allege this treatment was intentional for the purpose of discrimination. Plaintiff alleges that other inmates in his housing unit were recommended for transfer when their custody classification levels indicated they were eligible. The disagreement among the prison officials in plaintiff's case centered on whether plaintiff's security score made him eligible for the lower security classification and transfer to a camp facility. The other inmates from plaintiff's housing unit are not similarly situated to him unless they also had conduct violations, appealed their conduct violations, obtained reversals of those convictions, and were convicted of the conduct offense a second time. Plaintiff's situation is unique. He argues that BOP regulations encourage individual consideration of classification issues. His objection is that when applying this individual consideration, prison officials decided they would not lower his security classification. Absent allegations of disparate treatment among similarly situated prisoners for discriminatory purposes, plaintiff has not stated a claim for denial of equal protection.

Finally, plaintiff's third claim combines elements of due process and First Amendment retaliation claims. Plaintiff asserts his due process rights were violated because he appealed his disciplinary conviction and received a new hearing but then could not obtain a lower security level because the time he remained discipline-free was calculated from the date of the second hearing. He indicates this would deter a person of ordinary firmness from appealing a disciplinary conviction.

As stated above, plaintiff does not have a liberty interest protected by the due process clause in obtaining a lower security classification. *Olim*, 461 U.S. at 245. To state a claim for retaliation, plaintiff must demonstrate not only that he engaged in constitutionally protected conduct, and an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct, but also that the adverse action was taken because of his participation in the constitutionally protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). While appealing a conduct violation conviction may be considered protected conduct, there is no indication in the pleading that the Defendants' refusal to lower his security classification was motivated by the fact that he appealed his conduct conviction. The charges were incurred at FCI Morgantown where he had his first hearing. His second hearing was conducted at FCI La Luna. The appeals were complete before he arrived at FCI Elkton with an approved low security classification transfer. Plaintiff actually alleges Lewis and Hayes calculated his discipline free period using the date of the second conviction because they wanted to "create some justification for the disparity in transfer placement" when they indicated they would move plaintiff to the satellite low facility and then did not secure his transfer to that facility. (Doc. No. 1 at 7). Plaintiff has not alleged sufficient facts to suggest Lewis and Hayes were retaliating against him for appealing his appeal of his conduct conviction from another institution.

## III. CONCLUSION

For all the foregoing reasons, this action is dismissed pursuant to 28 U.S.C. § 1915(e). Pursuant to 28 U.S.C. § 1915(a)(3), an appeal from this decision could not be taken in good faith.

**IT IS SO ORDERED**.

Dated: October 29, 2015

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**